JAMES F. HANSON, plaintiff in error, *vs.* ROBERT CRAWLEY, defendant in error.

1. When a defendant pleads that he is security to the note sued on, and that it has been altered without his knowledge or consent, he is not entitled to take a verdict, on the plaintiff's closing his case after introducing the note in evidence without other testimony.

Hanson *vs.* Crawley.

2. If a motion to non-suit should have been sustained in that stage of the case, yet if the defendant, after it is overruled, proceeds, and both he and plaintiff introduce evidence on the issue made by the plea, and the evidence is sufficient to sustain a verdict for plaintiff, it will not be set aside and a new trial granted because of the refusal by the court to grant the non-suit.

3. If the defendant put in evidence the testimony of the principal as to what he said to the payee at the time the words were added to the note which are complained of, for the purpose of showing that he, the principal, was to be exclusively bound for the additional liabilities caused by those words, it is competent for the plaintiff, in rebuttal thereof, to prove all that the principal said at the time, as part of the *res gestæ.* And if such proof be not competent to charge the security with knowledge of and consent to the change, he should ask the court, by its charge to the jury, or when the evidence is admitted, so to limit its effect.

4. There was no abuse of the discretion of the court in refusing to grant a new trial on the ground that the verdict was against the weight of the evidence.

Promissory notes. Contracts. Alteration. Non-suit. Practice in the Superior Court. Evidence. Principal and security. New trial. Before Judge BARTLETT. Morgan Superior Court. March Adjourned Term, 1873.

This is the second time this case has been before the supreme court: See 41 *Georgia,* 303.

Robert Crawley brought complaint against James J. Morrison, as maker, and James F. Hanson, as security, for $650 00 in gold, besides interest, on the following note:

"$650 00. Twelve months after date, I promise to pay Robert Crawley, or bearer, six hundred and fifty dollars, for value received of him—cash borrowed. Nov. 17th, 1865.

(Signed)               "J. J. MORRISON,
                       "J. F. HANSON, security."

"I agree to pay the above in gold, having received it in gold.     (Signed)               J. J. MORRISON."

To this suit, Morrison making no defense, Hanson filed his plea, alleging that he was only security on the above note; that

he was not interested in the consideration; that the terms of the contract had been changed since he signed the note, by the addition of the words, " I agree to pay the above in gold, having received it in gold," the same having been placed on said note since the signing, with the knowledge and consent of the plaintiff, and without the knowledge or consent of defendant, and that, by reason of said addition, (the terms of the contract being altered, and the note made payable in gold,) he was discharged.

On the trial of the case the plaintiff introduced the note and closed. Defendant moved to take a verdict, upon the ground that the note showed upon its face that the terms of the contract had been altered and enlarged since the signing, and that all knowledge and consent being denied, the *onus* was upon plaintiff to show that the original contract was for gold, and known to be for gold by the security at the time of signing. This motion was overruled by the court, and defendant excepted.

Defendant then introduced the following evidence:

James F. Hanson testified as follows: He was security only on the note sued on, and had no interest in, and derived no benefit from, the consideration of said note. The words, " I agree to pay the above in gold, having received it in gold," were not on said note when he signed it, nor did he know they were on the same until served with the copy declaration when suit was brought. Never said to Robert Crawley, as testified to by him in his deposition, that it was a gold note, nor asked him if it was not a gold note, but did say to him it was a good note, as his (Hanson's) name was to it. Did not know that the note was given for the purchase of cotton when he signed it, nor for some time afterwards. Crawley was not present when witness signed the note, nor did he (Hanson) know, at the time of signing, anything of the consideration being other than currency. Never heard any conversation between Morrison and plaintiff in regard to consideration of said note. Morrison and witness married sisters, and lived about two miles of each other; and at the time the note was

signed, he was arranging to go into business with Morrison. Had had some conversation upon the subject, but had agreed upon no terms. The money borrowed was not for the purpose of going into business with witness. Witness, Morrison and another party, did go into business together in the spring of 1866. Witness did have a conversation with Crawley on the way to Winfrey's, and had several conversations with him at Rutledge and Madison after the note became due.

Deposition of James J. Morrison: The copy note attached to interrogatories is a correct copy of the one made by me to Crawley. Hanson signed it as security only. He was not interested in the consideration, nor was he to derive any benefit from it. The words, "I agree to pay the above in gold," etc., were affixed to said note after it was signed by Hanson. It was in my handwriting, made by me and accepted by Crawley, as it was my impression it would not be legal to make a note payable in gold, and as I was to pay it in gold, I made this separate agreement on the note, and so stated to Mr. Crawley at the time. Hanson was not present when the words were added, and it was done without his knowledge or consent. I made the indorsement to prevent the note from being void, as I thought, and also explained that I alone would be responsible for the difference between greenbacks and gold.

Deposition of Robert Crawley, the plaintiff: I sold the cotton to Morrison; he offered me, through R. J. Moseley, thirty cents in gold or forty-five cents in currency, to make a good note and pay good interest. He proposed to give Ed. Cox and Hanson as security. I told him Hanson would do. Morrison sent for the cotton on the next day, and set a time for me to come and get the note with Hanson's name to it. When the time arrived, he asked me to wait a few days longer, as Hanson had not yet arrived from Atlanta. The note simply called for $650 00, without mentioning the kind of currency. I asked him why he did not state in the note it was to be paid in gold. He stated that the supreme court had decided that if it was so stated it could not be collected, and then remarked—

"We all understand the conditions of the note, it is for gold," alluding to those interested in the note. I told him I would rather have a showing, but not on the note. He continued to argue the point until he put it down on the note. I had no conversation with Hanson until the next fall; I met him on the way to Winfrey's sale. He commenced conversation about the note; that was a short time before the note was due. He wanted to know if I was obliged to have the money when due, or would I wait longer. I remarked that "I should like very well to have it, as Morrison was going into bankruptcy, and he was only trustee for his wife, which I did not know at the time I let him have the cotton." He replied, "Oh, that note will be paid, because my name is to it." We had no further conversation about it till after the note was due. Then we had frequent conversations, in one of which he asked me if it was not a gold note. I said it was, and he remarked that he thought so. He said Morrison got in a tight for money, and that was the reason he bought the cotton. Shortly after the note was due, Hanson again remarked to me that the note would be paid, because his name was on it. The note was presented to me at Morrison's; Hanson was not present at the time. I am not deaf nor very hard of hearing.

The jury returned a verdict for $650 00, with interest, in gold.

A motion was made for a new trial by Hanson, on the following grounds, to-wit:

1st. Because the court erred in refusing to allow a verdict for defendant after plaintiff had closed.

2d. Because the court erred in allowing counsel for plaintiff to read to the jury that part of Robert Crawley's answers relating to conversations and declarations made by Morrison when Hanson was not present, in regard to the consideration of the original note signed by Hanson as security, and particularly that part of said answer contained in said words: "We all understand the condition of the note—it is for gold, alluding to those interested in the note."

3d. Because the verdict was contrary to the law and the evidence.

The motion was overruled and defendant excepted.

BILLUPS & BROBSTON, by brief, for plaintiff in error.

A. G. & F. C. FOSTER, for defendant.

TRIPPE, Judge.

1. A defendant has not the right to ask the court to direct the jury to give him a *verdict* on the conclusion of plaintiff's evidence, because the plaintiff has not made out his case. · He may move for a non-suit, which a court might properly grant, or the defendant could go.on to the jury with the evidence already before them, and claim that he is entitled to a verdict on the ground that no case is made out against him. But .the court will not, on motion, summarily order a verdict for defendant. A motion for a non-suit at that stage of the trial is the proper way to raise the question before the court, whether there is sufficient evidence to authorize or sustain a verdict.

2. But even if,.in a given case, it were proper for the court to grant such a motion, or if a motion for a non-suit was made and rejected when it should have been allowed, and the defendant, not relying upon his rights as then existing, but, after his motion is overruled, proceeds, and both he and the plaintiff introduce further testimony, a verdict for the plaintiff, if sustained by the whole evidence, will not be set aside because of the refusal of such motion by the court. If the case is for the defendant when the motion is made, he should rely upon it as it stands. If testimony introduced afterwards authorizes a recovery by plaintiff, the verdict will be good. It is not vitiated by the rejection of the motion, nor is the subsequent proof thereby rendered illegal. A new trial will not be granted because of an error which has been condoned or rendered harmless, and which could not possibly have affected the merits of the case or the verdict.

3. The defendant put in evidence what the principal (Mor-

rison,) said to the payee when the words were added to the note which are complained of. This was done for the purpose of showing that Morrison was only to be bound by the additional obligation, and therefrom an inference was to be drawn that Hanson was not a party to the change, nor to be affected by it; and, further, that by the understanding between Morrison and Crawley, he was not a party to or cognizant of the original contract for the payment of gold. If there was anything in the conversation that was stated by Morrison, and which was contradictory of such a construction, then Crawley was entitled to have it proved. The general rule is, that where one side proves a part of a conversation, the other has the right to have all of it given in It may be said to be a part of the *res gestœ.* If such proof is admissible for a particular purpose, the court should be requested to put a proper limitation on it as to how far and for what purposes it may be considered by the jury.

4. This case has been before this court heretofore, and is reported in 41 *Georgia,* 303. The principle is therein recognized that the addition to a contract of what was a part of it as agreed on, and which was left out by mistake, was not such a change as would release the security. Judge McCay, in that opinion, states it thus: "Had the fact been that the original contract was a specie contract, and the security knew it, and became security with that understanding, the mere fact that under a mistake of the law they left certain words out of the contract, which were afterwards put in by the principal, would not release the surety." That was the main question before the jury. Did the surety know it was a gold contract? There is no dispute that it was in fact to be paid in gold. The surety testified that he did not know it was for gold. The payee swore that the surety asked him if it was not to be paid in gold, and on an affirmative reply, he remarked he thought so. This was long after the words were added. The jury found for the plaintiff, and the court below was satisfied with the verdict. We cannot reverse his judgment. It may be added, that the principal does not state in

his testimony whether or not his surety knew it was a gold contract.

Judgment affirmed.